UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DEAN,

               Plaintiff,               Case No. 1:16-cv-700

v.                                           Honorable Robert J. Jonker

SHERMAN CAMPBELL,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff John Dean presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF). He sues the manager of the MDOC grievance section, Richard D. Russell, together with the following DRF officials: Warden Sherman Campbell; Deputy Warden David Fenby; Grievance Coordinator D. Kline; and unknown counselors, Assistant Resident Unit Supervisors, officers, and Aramark Food Service employees (Unknown Part(y)(ies)).

Plaintiff alleges that, on September 14, 2015, he worked in the food service department as a cook. On that day, he informed his housing unit officer that he was not feeling well and would not report for work. Under food-service policy, illness is a qualified reason for not reporting for work. Despite that fact, the officer returned a short time later to inform Plaintiff that Food Service had called the officer and told him to inform Plaintiff that he was being terminated from his food service assignment.

Later that day, officers placed Plaintiff in handcuffs and transported him from Level I of the facility to Level IV of the facility. Plaintiff was not informed of the reason for his transfer.

Prior to being transferred on September 14, 2015, Plaintiff filed a request for medical attention. His chief complaint was that he was vomiting and passing black stool. On September 15, 2015, Nurse Deanne Argersinger scheduled an appointment for Plaintiff to be seen in health care on September 17, 2015. However, she subsequently charted that Plaintiff had been transferred to the higher security level of the prison (DRF-W). She recorded that DRF-W had been informed of Plaintiff's health care request.

At approximately 6:52 a.m. on September 15, after Plaintiff had arrived in Level IV, Nurse Todd Lambert conducted a phone triage interview with Plaintiff. Lambert reported on the chart that Plaintiff felt like he was getting better. Lambert advised Plaintiff to contact health care again if his symptoms did not subside or if he became worse.

Plaintiff complains that he was not issued a misconduct ticket either before or after his transfer to Level IV. He filed a grievance. The Step-I respondent indicated that Plaintiff was being investigated for an alleged food service strike and that Plaintiff was placed in Level IV during the investigation. The response also indicated that Plaintiff's behavior was not appropriate for Level I at that time and that he would be monitored to determine when to decrease his confinement level.

Plaintiff remained in Level-IV housing for an unspecified period of time. He then was transferred to Level II, where he remained until February 2016.

Plaintiff complains that Defendant Campbell is aware of prisoner complaints of abuse by prison staff, but has not corrected the problem. He also alleges that unspecified Defendants have not paid him for all of the days that he worked in food service before being terminated. Plaintiff further conclusorily alleges that he was kept in Level IV in retaliation for his seeking medical attention for his serious medical condition.

In Count I of his complaint, he asserts that Defendants collectively retaliated in violation of the First Amendment by continuing his detention at Level IV because he filed an administrative grievance about his transfer. In Count II, Plaintiff alleges that Defendants collectively violated the Eighth Amendment, apparently by placing him and keeping him in Level IV without having issued a misconduct ticket and "by allowing staff abuse of prisoners, including Plaintiff at

the Carson City Correctional Facility." (Compl., ECF No. 1, PageID.7.) In Count III, Plaintiff alleges that Defendants collectively violated the Eighth Amendment by denying him constitutionally adequate medical treatment, by terminating his prison work assignment because he sought medical treatment, and by refusing to pay for all of the days Plaintiff worked, and by increasing his security level.

For relief, Plaintiff seeks compensatory and punitive damages.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liabilty

While Plaintiff conclusorily claims that "Defendants" violated his constitutional rights, his sole allegations against Defendants Campbell, Fenby, Kline and Russell are that they failed to supervise their subordinates, failed to act on his grievances to Plaintiff's satisfaction, and failed to adequately respond to grievances filed by unnamed other prisoners regarding unspecified conduct, all of which allegedly resulted in Plaintiff's injuries.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Further, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege any active conduct by Defendants Campbell, Fenby, Kline and Russell.

Moreover, Plaintiff's allegations – that Defendants failed to address the claims of unidentified other prisoners about unspecified matters that led in some unknown way to Defendants' subordinates' actions in the instant case – are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. 555.

Even if Plaintiff had properly identified active conduct by one or more Defendants, his allegations fail to state a claim of constitutional dimension.

### B. Eighth Amendment

In Counts II and III of his complaint, Plaintiff argues that Defendants violated the Eighth Amendment in multiple ways. First, he asserts that the increase in his security level amounted to cruel and unusual punishment under the Eighth Amendment, apparently because he believes that it was imposed in violation of prison rules, as he was not charged with a misconduct. Second, Plaintiff contends that unspecified Defendants violated the Eighth Amendment by denying him constitutionally adequate medical care. Third, he argues that Defendants violated the Eighth Amendment by terminating his work assignment for the improper reason that he was sick. Finally,

he argues that Defendants violated the Eighth Amendment by refusing to pay him for all of the days he worked prior to his termination.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

i.  increase in security level

Plaintiff complains that his security level was increased in violation of the Eighth Amendment. Arguably, Plaintiff also may intend to allege that Defendants violated his right to due

process and prison policy by increasing his security classification when he was never charged with a misconduct. The Court will address both issues.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

In addition, Plaintiff fails to demonstrate that he was deprived of due process when he was placed in Level IV housing without a hearing. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*,

111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security-classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Finally, to the extent that Plaintiff claims that the conditions and restrictions imposed upon him as a Level-IV prisoner have caused him mental distress in violation of his Eighth Amendment rights, he fails to state a claim. The courts have held that, even placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his placement in Level-IV housing, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of

privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim based on his placement in Level-IV housing.

ii.     denial of medical treatment

Plaintiff complains that he was denied constitutionally adequate medical care, in violation of the Eighth Amendment.  Like all Eighth Amendment claims, a claim based on the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, a plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges that he filed a request for medical care on September 14, 2015, complaining of nausea and dark stools. He received a call from a nurse the next morning at 6:52 a.m., and the nurse discussed his symptoms with him. Plaintiff alleges that the nurse reported that Plaintiff felt like he was getting better, and the nurse told him to contact healthcare if his symptoms did not abate or became worse. Plaintiff does not allege that the nursing note was incorrect, nor does he allege that he got any worse or was ignored. He also does not allege that he suffered any ongoing illness or symptoms. Further, Plaintiff utterly fails to allege facts suggesting that his medical condition was serious enough to warrant further medical attention. In these circumstances, Plaintiff's factual allegations fail to demonstrate either that he had an objectively serious medical condition or that any Defendant was deliberately indifferent to that condition. He therefore fails to demonstrate an Eighth Amendment violation based on the denial of treatment of a serious medical condition.

iii.     loss of prison employment

Plaintiff claims that the termination of his employment without adequate cause violated his rights under the Eighth Amendment. Reading his factual allegations broadly, the Court also will consider whether Petitioner was deprived of employment without due process.

The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See Ivey*, 832 F.2d at 955 (rejecting an Eighth Amendment claim based on the loss of

a prison job). "[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith v. Sapp*, Nos. 97–5642, 97–5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) (citing *Rhodes*, 452 U.S. at 347-49 (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, much less punishments that inflict unnecessary and wanton pain).

With respect to any argument that Plaintiff was wrongfully terminated from his prison job without due process, Plaintiff fails to state a claim. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

                iv.      refusal to pay for all days worked

In his final Eighth Amendment claim, Plaintiff asserts that Defendants subjected him to cruel and unusual punishment when they failed to pay him for an unspecified number of days he worked. Arguably, Plaintiff's allegations also implicate the Due Process Clause.

The Eighth Amendment does not protect a prisoner from the type of deprivation of property alleged here. *See Hunter v. Sherman*, 49 F. App'x 611, 612 (6th Cir. 2002) (noting that the plaintiff "[could] not state a claim under the Eighth Amendment for deliberate indifference to the security of his property"); *Smith v. Strode*, No. 1:14-CV-P37, 2014 WL 1761887, at *2 (Apr. 30, 2014) (unauthorized withdrawal of funds from inmate account does not implicate the Eighth Amendment); *Stackhouse v. McDonald*, No. 1:07-cv-1085, 2008 WL 108877, at *5 (W.D. Mich. Jan. 7, 2008) (theft of $20.00 from prisoner trust account does not amount to Eighth Amendment violation). Plaintiff utterly fails to allege how the loss of some monies resulted in a denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Moreover, Plaintiff is barred from bringing a due process claim for the failure to compensate him for his work by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he

must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Plaintiff therefore fails to state a claim under either the Eighth Amendment or the Due Process Clause for Defendants' failure to pay him an unspecified amount of compensation for his prison employment.

### C. Retaliation

Plaintiff baldly states that Defendants retaliated against him by terminating him from his employment and transferring and keeping him in Level IV housing. He contends that Defendants were motivated to do so either because he filed a grievance about his transfer to Level IV or because a request for medical care.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977))

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's allegations are wholly conclusory. He merely alleges the ultimate fact of retaliation. He has not presented any facts to support his conclusion that Defendants' actions to transfer him to or to keep him in Level IV were motivated by a desire to retaliate against him for requesting medical treatment or filing a grievance about his transfer. On the facts alleged, Plaintiff's retaliation claim is meritless.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), for failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:    September 26, 2016            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE